UNITED STATES of America,
Plaintiff–Appellee,

v.

Paul Robert BOWHAY, Defendant–
Appellant.

No. 92–30164.

United States Court of Appeals,
Ninth Circuit.

Submitted April 9, 1993 *.

Decided April 23, 1993.

Timothy D. Kosnoff, Bellevue, WA, for de-
fendant-appellant.

Richard A. Jones, Asst. U.S. Atty., Seattle,
WA, for plaintiff-appellee.

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and 9th Cir.R. 34–4.

Before: WRIGHT, THOMPSON and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

Paul Bowhay appeals from the district court's denial of his motion to suppress the evidence found in a black satchel which was seized when Bowhay was arrested. Bowhay argues that because the officer who searched the bag had an investigative as well as an inventory motive to search, the search could not be valid under the "inventory" exception to the Fourth Amendment. We reject this argument, and affirm. Since the officer's genuine purpose was to take an inventory as required by department policy, his second purpose of further investigation does not require suppression.

## I. Background

Bowhay was arrested late at night at a storage facility by an officer investigating a possible burglary. The officer had apprehended two robbers, and was looking for more, when Bowhay and Miller, another defendant, emerged from one of the storage buildings. Bowhay was carrying the black satchel at issue in this appeal. Two syringes protruded from the satchel. Miller was also carrying a bag. Upon seeing the officer, he threw the bag under a nearby car. The officer searched the bag discarded by Miller, found drugs in it, and called in the canine unit to sniff Bowhay's bag. The dog indicated that there were drugs in Bowhay's bag, and the officer then reached into it and found an envelope which contained narcotics.

Bowhay and the others were then taken to the police station, and so was Bowhay's bag. The officer searched the bag at the station, and found narcotics sales records, around $2000 in cash, a hand gun, a pager, a notebook containing narcotics, and the envelope with the drugs he had already found.

Claiming that this was not a valid inventory search, Bowhay unsuccessfully moved to suppress the evidence found in the black satchel.

## II. Standards

The district court's findings of fact at a suppression hearing will be upheld unless they are clearly erroneous. *United States v. Feldman*, 788 F.2d 544, 550 (9th Cir.1986), *cert. denied*, 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987). Whether these facts constitute a bona fide inventory search is reviewed de novo. *United States v. Johnson*, 936 F.2d 1082 (9th Cir.1991).

■ To be valid, an inventory search must conform to a standardized and established local procedure, and must be motivated by a "concern to inventory [the items] rather than to search for other incriminating evidence." *Feldman*, 788 F.2d at 553.

## III. Inventory Search

### A. *Adherence to the Procedure*

■ The district court found that the Seattle Police Department had a standard procedure regarding any piece of possible evidence brought to the station: everything is inventoried. Bowhay challenges this finding, but we cannot upset it unless it is clearly erroneous. *Feldman* at 550. The district court's finding is supported by the officer's testimony

> You can do one of two things with a person's property after he's arrested. You can either take it down to the jail, in which case if you do, you need to inventory it so that you're not introducing any contraband, you're not introducing money, et cetera, et cetera, to the jail because we need to account for all that.

> Or the other option if it's not evidence is to introduce it into what we call safekeeping, which goes up to the property room. And property room requires that we have gone through the contraband, et cetera, before they keep it for the subject to retrieve after he's out of jail.

The officer clearly testified that under either option the property is inventoried.

Bowhay challenges this finding by pointing to a portion of the transcript where the officer testified

> Like I said, we don't have a set policy. You can search this, you can't search this, you can't search this, you can search this, you can search that.

But the context of this testimony makes clear that the officer was responding to questions about policies for searching *locked* containers, which Bowhay's bag was not. The latitude allowed was similar to that approved in *Florida v. Wells,* 495 U.S. 1, 6–7, 110 S.Ct. 1632, 1636, 109 L.Ed.2d 1 (1990). As to the general policy of searching all items for inventory purposes, the officer's testimony was not equivocal. The trial judge's finding as to the policy of taking an inventory of all personal property was not clearly erroneous.

### B. *Purpose of Search*

■■■ Bowhay argues that because the officer viewed the search as both an investigative and as an inventory search, it could not be a valid inventory search. It is true that an inventory search is invalid if it was a pretext for an investigative search. *Feldman,* 788 F.2d at 553. In a pretext case, only the investigative motive is bona fide. In this case, on the other hand, the officer had dual bona fide motives: to search for "narcotics or weapons," and to compile an inventory of the bag's contents. Bowhay argues that the presence of the allegedly improper motive invalidates the search.

We have not previously faced a situation in which the searching officer admitted to having dual motives. Usually, a challenge to an inventory search arises when the officer claims to be conducting an inventory search, but the surrounding circumstances show an investigatory purpose rather than a bona fide inventory search. *See United States v. Monclavo–Cruz,* 662 F.2d 1285, 1289 (9th Cir. 1981).

In the context of arrests, where the officer testified that he knew the defendant was suspected of manufacturing methamphetamine but "would have stopped him anyway because of his speeding and careless driving," we have held that the dual motive does not make the arrest pretextual. *United States v. Lillard,* 929 F.2d 500, 502 (9th Cir.1991).

■■ The "would have ... anyway" rationale of *Lillard* applies to inventory searches as well. *United States v. Frank,* 864 F.2d 992, 1001 (3rd Cir.1988) ("The mere fact that an inventory search may also have had an investigatory purpose does not, however, invalidate it"), *cert. denied,* 490 U.S. 1095, 109 S.Ct. 2442, 104 L.Ed.2d 998 (1989); *United States v. Bosby,* 675 F.2d 1174 (11th Cir. 1982) (evidence admissible if discovered pursuant to inventory procedure, even though officer expected to find evidence); LaFave *Search and Seizure* § 1.4(e) at 92–3 (2nd ed. 1987) (suppression not required when, even assuming questioned motivation is dominant, "the Fourth Amendment activity undertaken is precisely the same as would have occurred had the intent or motivation been entirely absent from the case"). When the police conduct would have been the same regardless of the officer's subjective state of mind, no purpose is served by attempting to tease out the officer's "true" motivation. *See Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) (Court rejects argument that "plain view" seizure requires inadvertent discovery, in part because the Court prefers "application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer"). Penalizing officers who are candid enough to admit that they hope to find evidence of a crime can only encourage obfuscation and dishonesty, without protecting reasonable expectations of privacy.

In this case, the department's policy was to search everything; the officer had no discretion. Because of this, the presence of an investigative motive does not invalidate the inventory search. Since we uphold this search as a valid inventory search, we do not consider the other proffered justifications for the search.

AFFIRMED.